IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SHAKIR A. MITCHELL, # 450-764,   *

Plaintiff   *

v   *   Civil Action No. PX-17-3263

FRANK B. BISHOP, JR., Warden NBCI,[1]   *
LT. VAUGHN WHITEMAN,
OFC. RANDY WARD,   *

Defendants   *
    ***

## MEMORANDUM OPINION

Plaintiff Shakir A. Mitchell brings this civil rights action against the Warden and two Corrections Officers at North Branch Correctional Institution in Cumberland, Maryland ("NBCI") stemming from an incident occurring on April 21, 2017. Mitchell alleges that his pre-existing shoulder injury was exacerbated when corrections officers took him to the ground and handcuffed him. Mitchell also complains that his cane had been improperly confiscated, and that officers "threatened [him] and called [him] racist names." ECF No. 1 at 2-3. As damages, Mitchell demands $2,000,000.00 and asks this Court to order Defendant Whiteman's termination and Correctional Officer Ward's demotion. ECF No. 1 at 4.

Presently pending before the Court are Defendants' motion to dismiss or in the alternative for summary judgment in their favor. The Court has reviewed the pleadings and finds no hearing necessary. *See* Local Rule 105.6 (D. Md. 2016). For the following reasons, Defendants' dispositive motion is GRANTED.

---

[1] The Clerk shall amend the docket to reflect that the Warden of NBCI is Frank B. Bishop, Jr.

I.   **Factual Background**

The following facts are not disputed. On April 21, 2017, an incident arose involving Mitchell's cellmate, James Young, causing corrections officers to order both men to lock into their cells. Young and Mitchell refused to comply. ECF No. 13-2 at 6. According to one corrections officer, Young struck the officer above his left eye while the officer attempted to handcuff Young. *Id.* At the same time, Mitchell continued to talk to another corrections and not lock in to his cell. The officer then took Mitchell to the ground.[2] Mitchell was then handcuffed and escorted from the area. ECF No. 13-2 at 6, 8, 24. Mitchell was placed in the "bullpen" without his cane, causing him to fall to the floor where he remained in pain from the takedown. ECF No. 15-2. Mitchell was taken to the medical unit where he initially refused evaluation or treatment but then later accepted medical care for his back pain. ECF No. 13-2 at 5-22. ECF No. 13-2 at 22; ECF 13-6 at 12. Mitchell was placed on the segregation unit pending an adjustment proceeding and was denied his cane except when permitted to leave his cell. ECF No. 13-2 at 24-25. *See also* ECF 13-5, ¶¶ 5-6 (Ward Decl.).[3]

Mitchell was charged with violating Rule 312 (interfering with or resisting the performance of staff duties to include a search of a person, item, area, or location) and Rule 401 (refusing to work, carry out an assignment, or accept a housing assignment). *Id.* Mitchell pleaded guilty to violating Rule 401 and was sentenced to 30 days of segregation. *Id.* at 17-19. A medical

---

[2] Defendants state that the Inmate Handbook instructs prisoners that during a disturbance they must "get down and lay face down on their stomach until they are instructed to get up" and that those who do not adhere to this policy may be subject to use or force and/or charged with institutional rule violations. ECF No. 13-2 at 24, Administrative Remedy Procedure Case Summary.

[3] Mitchell does not dispute the above-described events, but rather contends that any apparent non-compliance on his part was because he had been attempting to calm Young, defuse the situation, and act as a peacemaker. ECF No. 15 at 2; *see also* Declarations of James Young, Rodney Pitts, DeAngelo Hargrove, Gregory Hilton, Darren Gray and Shakir Mitchell. *Id.*

order for using the cane was cancelled by Nurse Christa Belack effective May 1, 2017. ECF No. 13-2 at 25; ECF No. 13-6 at 15.

Defendants principally argue that Mitchell's claims cannot proceed because the officers used the minimum force necessary to maintain order and discipline, and any threatening and abusive language uttered during the incident is insufficient to state a claim. Additionally, Defendants argue that they are immune from suit in their official capacities. Warden Bishop asserts that he played no role in the incident. ECF No. 13.

**II.     Analysis**

    **A.     Standard of Review**

The parties have submitted evidence that goes beyond the four corners of the Complaint. Accordingly, the Court treats this motion as one for summary judgment. Fed. R. Civ. P. 12(d). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted if the movant shows that no genuine dispute exists as to any material fact and the movant is entitled to judgment as a matter of law. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. *See Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court must view the evidence in the light most favorable to the nonmovant and draw all inferences in his favor without weighing the evidence or assessing witness credibility. *See Dennis v. Columbia Colleton*

*Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Factually unsupported claims and defenses are not to proceed to trial. *Bouchat,* 346 F. 3d at 526.

### B.  Claims against Warden Bishop

Mitchell's theory of liability as to Warden Bishop is based on his supervisory status as Warden. However, where a Plaintiff seeks relief for constitutional violations pursuant to 42 U.S.C. § 1983, the doctrine of *respondeat superior* does not apply. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983). Accordingly, a supervisory official cannot be held liable for the acts of his subordinates; rather, liability must be based on "supervisory indifference or tacit authorization of subordinates' misconduct" as a "causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). More particularly, to survive summary judgment, the Plaintiff must demonstrate that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Viewing the facts most favorably to Mitchell, the claims against Bishop must fail. No record evidence shows that Bishop was involved in the April 21, 2017 incident. Nor does Mitchell demonstrate that Bishop knew that officers engaged constitutionally deficient conduct for which Bishop took no affirmative remedial action. Summary judgment in favor Bishop, therefore, is granted.

### C. Claims against Corrections Officer Defendants

Mitchell contends that the officers' handcuffing and taking him to the floor, as well as depriving him of his cane, caused unnecessary exacerbation of Mitchell's physical pain. Construed most generously to Mitchell, the Court views the claim as one asserting a violation of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. The Eighth Amendment prohibition on cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned," *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996), and is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173 (1976)). To sustain an Eighth Amendment claim, an inmate must demonstrate the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury was sufficiently and objectively serious to constitute a violation. *Williams,* 77 F.3d at 761.

On the subjective element, an inmate must show that the guards used force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian,* 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers,* 475 U.S. 312, 320–21 (1986)). In assessing this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat;" and "(4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve,* 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley,* 475 U.S. at 321).

As for the objective element, the plaintiff must show that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy,* 559 U.S. 34, 39 (2010). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37 (quoting *Hudson,* 503 U.S. at 9). Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury. *Id.* at 38 ("[A]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson,* 503 U.S. at 9.

Defendants contend that when viewing the evidence most favorably to Mitchell, summary judgment is warranted because the force used was reasonable and necessary to gain Mitchell's compliance during a potentially dangerous situation. Mitchell has produced no evidence to the contrary. This is so even accepting that Mitchell intended to defuse the situation by attempting to calm Young. Mitchell does not dispute that he did not lock into his cell when ordered to do so. This refusal prompted guards to subdue Mitchell and gain control of a volatile incident. Defendants thereafter provided medical treatment to Mitchell as well as limited access to his cane while he was placed in segregation for his self-admitted rule violation. Viewed most favorably to Mitchell, the Court can discern no facts supporting an Eighth Amendment violation stemming from the April 21, 2017 incident.

Likewise, the racially charged insults hurled at Mitchell, while disturbing, are insufficient to state a constitutional claim. *See e.g. Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979); *see also Carter v. Morris*, 164 F.3d 215, 219, n.3 (4th Cir. 1999) (rejecting use of racial epithets as a basis for constitutional claim). To be clear, this Court does not, in any way, condone uttering racial

epithets, nor can the Court fathom a legitimate penological basis for doing so. That said, the use of such disgraceful language does not transform the incident into an Eighth Amendment violation. *See Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995) ("[N]ot all undesirable behavior by state actors is unconstitutional."). [4] Summary judgment is thus granted in Defendants favor.

### III.  Conclusion

Based on the foregoing, the Court will grant Defendants' motion. A separate Order follows.

Date:  11/21/18                                    /S/
                                                   Paula Xinis
                                                   United States District Judge

---

[4] Because the Court finds that the claims do not survive on the merits, the Court declines to address the defense of qualified immunity.